Stephanie I. Sprecher WSB #6-2988
Mackenzie R. Morrison WSB # 8-6516
Assistant United States Attorneys
District of Wyoming
P.O. Box 22211
Casper, WY 82602
307-261-5434
stephanie.sprecher@usdoj.gov
mackenzie.morrison@usdoj.gov

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| Plaintiff, | |
| **v.** | **Criminal No. 24-CR-34-KHR** |
| **FRANK RAY BERRIS,** | |
| Defendant. | |

---

## NOTICE OF INTENT TO OFFER RULE 404(b) EVIDENCE

---

The United States hereby gives notice of its intent to offer evidence at trial of the Defendant's prior encounters with law enforcement that occurred on November 9, 2022, in Natrona County, Wyoming, and December 17, 2022, in Fremont County, Wyoming. Additionally, The United States intends to offer evidence at trial that the Defendant has previously been convicted of being a felon in possession of firearms in Illinois on three occasions and on one occasion for unlawful use of weapons. The United States believes this evidence is admissible under Rule 404(b). The government intends to offer this evidence of the Defendant's intent, lack of mistake or accident, and knowledge.

On March 13, 2024, the grand jury charged the Defendant as being a felon in possession of firearms and ammunition in a single count indictment (Doc. 20).  The Defendant entered his plea of not guilty and is proceeding to trial.

At trial, the United States intends to offer evidence and testimony from the law enforcement encounters with the Defendant on November 19, 2022, in Natrona County, Wyoming, at which time the Defendant was in possession of a firearm. Then approximately a little more than a month later on December 17, 2022, the Defendant had another encounter with law enforcement in Fremont County, Wyoming.  During this encounter, the Defendant was in possession of a handgun. The evidence related to these law enforcement contacts *may* include evidence from the investigations, surveillance, arrest, searches and any related statements.

At trial, the United States intends to offer evidence and possible testimony regarding the Defendant's prior convictions, more specifically: 1998 Madison County, Illinois, conviction for unlawful possession of a weapon by a felon. *See* Exhibit 1; 1999 Madison County, Illinois, conviction for unlawful use of weapons. *See* Exhibit 2; 2001 Madison County, Illinois, conviction for unlawful possession of weapons by a felon.  *See* Exhibit 3; and 2009 Madison County, Illinois, conviction for unlawful possession of a weapon by a felon.  *See* Exhibit 4.

By providing this notice, the United States does not concede the proposed evidence is governed by Rule 404(b). Rather, the United States expressly reserves the right to seek introduction of any evidence through other appropriate evidentiary rules or law.  The United States also reserves the right to supplement this notice with additional evidence or argument.

## I.     FACTS

### a.  Present Case

On February 2, 2024, Wyoming Highway Patrol Trooper Kyle O'Malley was on routine patrol on US Highway 20/26 when he spotted a black Ford Explorer with what looked to be a fictious license plate.  Trooper O'Malley was able to get up next to the Explorer and confirmed that the vehicle had a fictious plate that read, "DIPLOMAT/FOERIGN NATIONAL." Trooper O'Malley knew from his training and experience that these types of plates are consistent with plates commonly displayed by "Sovereign Citizens."

Trooper O'Malley initiated a traffic stop on the vehicle for failure to display a valid registration.  Trooper O'Malley contacted the driver, who was identified as Frank Ray Berris, the Defendant and sole occupant of the vehicle. While speaking with the Defendant, Trooper O'Malley observed a black pistol with a silver slide in a cloth holster between the driver's seat and the center console.  He also observed a black AR-15 style rifle with a large scope tucked between the passenger seat and center console.  Trooper O'Malley requested a driver's license, registration and proof of insurance from the Defendant.  The Defendant stated he didn't need a driver's license to travel freely through the state.  The Defendant also stated that he didn't need to provide proof of insurance.  The Defendant told Trooper O'Malley to go ahead and write him citations because within 72 hours he would have the citations rescinded because of his "status and standing."

Trooper O'Malley ran an NCIC check on the Defendant.  The check came back as the Defendant's license status as "Not Eligible" and that he was suspended. At this point, Trooper O'Malley contacted WHP Lieutenant Clint Christensen as he recognized the Defendant from an encounter with another WHP Trooper in November 2022, at which time the Defendant threatened to have a shootout with law enforcement in a similar circumstance. Trooper O'Malley advised Lt.

Christensen the Defendant had two firearms in the vehicle.  Based on multiple prior violations and WHP protocols, Trooper O'Malley was advised by Lt. Christensen to take the Defendant into custody.  At this time officers from Mills, Wyoming, Police Department, and deputies from the Natrona County Sheriff's Office arrived on scene.  The Defendant was ordered out of the vehicle. The Defendant responded, "Oh no sir, I am not getting out of this vehicle."  Trooper O'Malley then asked the Defendant to exit the vehicle three more times, to which the Defendant responded he was not going to get out of the vehicle, and they would have to kill him.  Trooper O'Malley retreated behind his patrol vehicle while keeping the Defendant at gun point and attempted to conduct a "high risk stop" as the Defendant was refusing to comply with lawful orders and had firearms in the vehicle. Trooper O'Malley again ordered the Defendant out of his vehicle at least another 19 times. It was at this time additional units arrived on scene and a determination was made to block traffic from both the east and west for public safety. Trooper O'Malley attempted to order the Defendant out of the vehicle, although he refused and was attempting to communicate with Trooper O'Malley while still seated in his vehicle. At this point, NCSO Deputy Ryan Sheets began taking over commands. While the Defendant was being given lawful commands to exit his vehicle, he stated that the only way he was coming out was if there was going to be a murder. Deputies continued with commands to the Defendant to surrender to no avail. Again, the Defendant stated that he was not leaving his vehicle and the only way would be a body bag. Over the course of nearly three hours the Defendant was ordered out of his vehicle at least 52 times. The Defendant on several accounts acknowledged law enforcement commands, and argued with the commands or blatantly stated he would not comply with the orders. Hours later, the Defendant finally exited his vehicle and was taken into custody without incident and was transported to Natrona County Detention Center.

b. **Facts Surrounding November 9, 2022, Law Enforcement Encounter**

On November 9, 2022, Wyoming Highway Patrol Trooper Saajan Biant was patrolling the East bound lane into Casper, Wyoming, on US Highway 20/26 when he observed a vehicle traveling at a high rate of speed in the West bound lane.  Trooper Biant confirmed the vehicle was traveling at 83 mph in a posted 70 mph zone. Trooper Biant conducted a traffic stop of the vehicle, a black Ford Explorer.  Trooper Biant noticed the plate on the back of the vehicle read "Wyoming, Private Property, No Trespassing, American State National."  Trooper Biant approached the driver who he identified as the Defendant by way of US Passport.  Trooper Biant informed the Defendant he was speeding.  The Defendant stated, "Actually I'll bet you $1000 you can't show me a law where I have to have a driver's license, let alone the authority to tell me how fast I'm going." Trooper Biant then asked for the Defendant's driver's license.  The Defendant didn't produce a driver's license but did produce a passport.

Trooper Biant asked the Defendant where he was going, and the Defendant stated, "that's none of your concern."  At this time, Trooper Biant returned to his patrol vehicle and ran the Defendant's information through NCIC and the Natrona County local system.  Trooper Biant observed that the Defendant had two warrants, one from the Town of Mills for Failure to Comply for no driver's license and a county wide bench warrant for Failure to Appear for no driver's license, no registration and no insurance.  Trooper Biant returned to the Defendant's vehicle and asked if the vehicle was registered to him.  The Defendant laughed, and stated, "You really don't understand the law do you?" The Defendant went on to state, "I'm an American State National, so I don't register anything.  I'm a sovereign individual, allowed to travel freely down public thoroughfares without being detained."  At this point, Trooper Biant could hear the frustration in the Defendant's tone.  Trooper Biant realized his questioning was escalating the situation and

decided to wait for backup to arrive.  Lieutenant Peter Cross as well as NCSO Deputy Todd Christensen arrived on scene.  Deputy Christensen spoke with the Defendant for some time.  The Defendant then asked for his passport back.  Trooper Biant stated that he would not return the passport until he stepped out of the vehicle.  The Defendant would not comply with any law enforcement commands to exit the vehicle.  Finally at one point, Lt. Cross told the Defendant if he did not exit the vehicle, he would be forced to break a window, unlock the door and pull the Defendant out of the vehicle.  The Defendant told Lt. Cross, "If you do that, this is going south quick." Then the Defendant told Lt. Cross, "We are going to have a gun fight on the side of the road is what we are going to have." During interactions with Deputy Christensen the Defendant lifted his shirt to reveal a firearm on his hip.   At this point, law enforcement decided any action with the Defendant would obtain a negative response from the Defendant.  The Defendant was given back his passport and let go.

Later, Trooper Biant submitted an affidavit for violations of speeding, operation without a registration, interference for failing to comply with lawful orders to produce a driver's license and registration.

### c.  Facts Surrounding December 17, 2022, Law Enforcement Encounter

On December 17, 2022, Deputy Michael Phillips of the Fremont County Sheriff's Office was on routine patrol around the 500 Block of Eight Mile Road near Riverton, Wyoming. Deputy Phillips observed a dark colored SUV traveling northbound at a high rate of speed and didn't have a proper license plate. Deputy Phillips conducted a traffic stop. Deputy Phillips approached the vehicle and observed three individuals in the vehicle.  Deputy Phillips contacted the driver, who stated he was a sovereign citizen and handed Deputy Phillips his passport which identified him as Frank Berris.  Deputy Phillips contacted the Fremont County Communications Center and was

advised the Defendant had an extraditable warrant out of Natrona County.  Deputy Phillips advised the Defendant he had a warrant for his arrest and the Defendant became argumentative. The Defendant explained he was a sovereign citizen and the warrant for his arrest was not valid. Deputy Phillips explained the warrant was valid and that the Defendant was going to jail.  At this time, the Defendant stated, "Are we going to shoot it out boys" to his passengers. Finally, the Defendant agreed to accompany Deputy Phillips to the Fremont County Detention Center, then removed a handgun from his person and gave it to the front seat passenger.  Deputy Phillips recognized the handgun as a Kimber 1911 style, .45 caliber handgun.  On the way to the jail, Deputy Phillips spoke with the Defendant and commented on the Kimber.  The Defendant did not deny it was a Kimber.  When the Defendant was booked into the detention center, jail personnel found a loaded .45 caliber magazine on the Defendant.

### d.    1998 Conviction Unlawful Possession of Weapons by a Felon

On October 28, 1998, Defendant was convicted of Unlawful Possession of Weapons (.380 handgun) in the state of Illinois (case number 98-CF-2158).  He was sentenced to two years of Intensive Supervision.  The United States intends to rely on certified court and law enforcement records to identify the Defendant. The documents the United States will rely upon are attached as **Exhibit 1**.  Any additional information about this conviction received by the United States will be provided as a supplement to this notice.

### e.  1999 Conviction - Unlawful Use of Weapons

On October 4, 1999, Defendant was convicted of Unlawful Use of Weapons (a concealed 9mm pistol) in the state of Illinois (case number 99-CF-1672).  He was sentenced to one year of Intensive Supervision.  The United States intends to rely on certified court and law enforcement records to identify the Defendant.  The documents the United States will rely upon are attached as

**Exhibit 2**.  Any additional information about this conviction received by the United States will be provided as a supplement to this notice.

### f.   2001 Conviction – Unlawful Possession of Weapons by a Felon

On April 11, 2001, in the state of Illinois, Defendant pleaded guilty to Unlawful Possession of a Weapon (9mm pistol) by a Felon and was sentenced to 30 months intensive probation (case number 00-CF-1741).  His fingerprints were documented at his arrest.  In February of 2002, his probation was revoked, and he was sentenced to one year at the State of Illinois Department of Corrections.  The United States intends to use certified court records, law enforcement and the certified records from the Department of Corrections, including a fingerprint card comparison to identify the Defendant as the individual convicted of that offense. The documents the United States will rely upon are attached as **Exhibit 3**.  Missing from the exhibit is the certified penitentiary packet from the State of Illinois.  Once received, this notice will be supplemented to include them.

### g.   2009 Conviction – Unlawful Possession of a Weapon by a Felon

On September 16, 2009, Defendant was convicted of Unlawful Possession of a Weapon (a pistol) by a Felon in the state of Illinois (case number 08CF0091801).  He was sentenced to 18 months special probation followed by 12 months of intensive probation.  His fingerprints were documented at his arrest.  The United States intends to use certified court and law enforcement records, including a fingerprint card comparison to identify the Defendant as the individual convicted of that offense.  The documents the United States will rely upon are attached as **Exhibit 4**.  Any additional information about this conviction received by the United States will be provided as a supplement to this notice.

### II.      404(b) ARGUMENT

Rule 404 of the Federal Rules of Evidence governs character evidence, including crimes

8

and other bad acts. Evidence of crimes, wrongs, or other acts is prohibited under the Federal Rules of Evidence when used "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Fed. R. Evid. 404(b)(1).  Such evidence is permitted, however, "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b)(2).  To determine whether Rule 404(b) evidence is properly admitted, the Court must look to the four-part test from *Huddleston v. United States*, 485 U.S. 681 (1988):

(1)     The evidence must be offered for a proper purpose under Rule 404(b);

(2)     The evidence must be relevant under Rule 401;

(3)     The probative value of the evidence must not be substantially outweighed by its potential for unfair prejudice under Rule 403; and

(4)     The district court, upon request, must have instructed the jury pursuant to Rule 105 to consider the evidence only for the purpose for which it was admitted.

*See United States v. Rodella*, 804 F.3d 1317, 1333 (10th Cir. 2015).

### 1.  The evidence is offered for a proper purpose.

The first *Huddleston* factor requires the evidence be offered for a proper purpose under Rule 404(b). "Evidence is offered for a proper purpose if it is utilized for any of the 'other purposes' enumerated in Rule 404(b)," *United States v. Davis*, 636 F.3d 1281, 1298 (10th Cir. 2011), and that enumerated list "is illustrative, not exhaustive," *United States v. Brooks*, 736 F.3d 921, 939 (10th Cir. 2013) (*citing United States v. Tan*, 254 F.3d 1204, 1208 (10th Cir. 2001)). "Rule 404(b) is considered to be an inclusive rule, admitting all evidence of other crimes or acts except that which tends to prove only criminal disposition." *Brooks*, 736 F.3d at 939.

Under the first prong of *Huddleston,* the evidence of the Defendant's possession of the firearms on November 9, 2022, and on December 17, 2022, and each of his prior convictions, are offered here for the proper purpose of establishing defendant's intent, lack of mistake or accident, and knowledge. *See United States v. Ramirez*, 63 F.3d 937, 943 (10th Cir. 1995) (listing cases). The Tenth Circuit has held that prior possession of firearms is admissible to establish the defendant's knowledge when charged with being a felon in possession of a firearm under § 922(g). *See United States v. Moran*, 503 F.3d 1135, 1143–44 (10th Cir. 2007) see also *United States v. McGlothin*, 705 F.3d 1254, 1265 (10th Cir. 2013)  ("Moran makes clear that when a defendant places his intent at issue, the defendant's prior acts of weapon possession are relevant for the purpose of demonstrating the charged act of firearm possession was knowingly undertaken."); see also *United States v. McGlothin*, 705 F.3d 1254, 1265 (10th Cir. 2013) ("In prosecution for possession of a firearm by a felon, other crimes evidence of prior weapon possession was relevant. . .").  The Defendant's ongoing firearm possession is probative on the issue of his intent and his knowledge that the firearms in the instant case were present in his vehicle and of his status as a prohibited possessor in the present case. In turn, this evidence tends to show that his possession was not because of mistake or accident and are purposes specifically contemplated by Rule 404(b) and are plainly proper.

The first *Huddleston* factor is thus satisfied.

### 2.     The evidence is relevant under Rule 401.

The second *Huddleston* factor requires that the evidence is relevant under Rule 401. Evidence is relevant if: (1) "it has any tendency to make a fact more or less probable than it would be without the evidence;" and (2) "the fact is of consequence in determining the action." Fed. R. Evid. 401.  In other words, "[r]elevant evidence tends to make a necessary element of an offense

more or less probable." *Davis*, 636 F.3d at 1298.

"The lynchpin of *Huddleston* relevance is similarity." *United States v. Henthorn*, 864 F.3d 1241, 1249 (10th Cir. 2017). "To determine the relevance of a prior bad act, [the court must] look to the similarity of the prior act with the charged offense, including their temporal proximity to each other." *Brooks*, 736 F.3d at 940. Uncharged acts are admissible "as long as the uncharged acts are similar to the charged crime and sufficiently close in time." *United States v. Mares*, 441 F.3d 1152, 1157 (10th Cir. 2006) (citing *United States v. Zamora*, 222 F.3d 756, 762 (10th Cir. 2000)). "[T]he degree to which factors such as temporal distance and geographical proximity are important to a determination of the probative value of similar acts will necessarily depend on the unique facts of each case's proffered evidence." *Mares*, 441 F.3d at 1159.

Evidence's relevance cannot "depend on a defendant likely acting in conformity with an alleged character trait" or require the jury to draw a "chain of inferences dependent upon [a] conclusion" about the defendant's character. *See United States v. Commanche*, 577 F.3d 1261, 1267, 1269 (10th Cir. 2009). But all this is "not to say that other-act evidence must be excluded whenever a propensity inference can be drawn; rather, Rule 404(b) excludes the evidence if its relevance to 'another [proper] purpose' is established only through the forbidden propensity inference." *United States v. Rodella*, 804 F.3d 1317, 1333 (10th Cir. 2015).

Evidence remains admissible even if it has the potential "impermissible side effect of allowing the jury to infer criminal propensity," so long as the jury "[i]s not *required* to make any such inferences in order to also" find willfulness or intent, or any of the other proper purposes allowed under Rule 404(b). *See Henthorn*, 864 F.3d 1241, 1251-52, quoting *Rodella,* 804 F.3d at 1333-34 (emphasis in original). The court in *Henthorn* explained this nuance through *United States v. Moran*, 503 F.3d 1135 (10th Cir. 2007). *Henthorn*, 864 F.3d at 1252. In *Moran*, the district

court presiding over defendant Moran's trial for being a felon in possession of a firearm allowed the government to present evidence of Moran's eleven-year-old felon-in-possession conviction. *Moran,* 503 F.3d at 1138-39.  While the use of Moran's prior conviction to help prove the only challenged element of the charged offense (*i.e.*, that Moran "knowingly possessed" the firearm) "involve[d] a kind of propensity inference (*i.e.*, because he knowingly possessed a firearm in the past, he knowingly possessed the firearm in the present case)," the court explained that the inference "did not require a jury to first draw the forbidden general inference of bad character or criminal disposition." *Id.* at 1145.  Instead, the inference was "specific" and "rest[ed] on a logic of improbability that recognizes that a prior act involving the same knowledge decreases the likelihood that the defendant lacked the requisite knowledge in committing the charged offense." *Id.*  Moreover, the testimony does not have anything to do with propensity, either the kind identified in *Moran* or the improper kind identified in Rule 404(b). Instead, it is circumstantial evidence that he knowingly possessed the firearms found in his vehicle. See *McGlothin 705 F.3d at 1265* citing *United States v. Carter,* 695 F.3d 690, 702 (7th Cir. 2012) ("[D]efendant's possession of a gun two months prior to arrest was admissible under Rule 404(b) as circumstantial evidence of his later possession of the same gun").

Under the second prong, the evidence of the Defendant's law enforcement encounters, which involved firearms and his prior convictions for being a prohibited person in possession of firearms are highly relevant to the case at hand. The government is required to prove that the Defendant knowingly possessed the firearms at issue in this case. The proffered evidence demonstrates the Defendant knowingly possessed the firearms in this case and, therefore, is relevant.

The Defendant's prior incidents with law enforcement have similarities to the offense charged in this case including the temporal proximity to each other and geographical proximity and are circumstantial evidence of Defendant's knowing possession of the firearms at issue in this case. Although removed in time, Defendant's prior convictions for being a felon in possession of firearms and unlawful use of weapons establish the Defendant's continued knowledge of his prohibited status at the time of the alleged offense in this matter. The Defendant's previous possession of firearms makes this evidence highly probative on issues such as knowledge, intent, absence of mistake, or accident.  The past behaviors support the inference that he had the same knowledge for the present charge.  Because the proffered evidence is offered for the proper purposes under Rule 404(b) and is relevant, the second *Huddleston* factor is met.

### 3.      The probative value of the evidence is not substantially outweighed by its potential for unfair prejudice under Rule 403.

The third *Huddleston* factor requires the evidence's probative value not be substantially outweighed by its potential for unfair prejudice.  Fed. R. Evid. 403 directs that a court may exclude evidence if its "probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  The exclusion of evidence under Rule 403 "is an extraordinary remedy and should be used sparingly."  *Brooks*, 736 F.3d at 940 (quoting *United States v. Tan*, 254 F.3d 1204, 1211 (10th Cir. 2001)).

"Evidence is unfairly prejudicial if it makes a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant *wholly apart* from its judgment as to his guilt or innocence of the crime charged."  *Henthorn*, 864 F.3d at 1256, quoting *United States v. Mackay*, 715 F.3d 807, 840 (10th Cir. 2013) (citation omitted) (emphasis in original).  "In engaging in the requisite balancing," courts "give

the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value." *Id.,* quoting *United States v. Cerno*, 529 F.3d 926, 935 (10th Cir. 2008).  And "it is not enough that the risk of unfair prejudice be greater than the probative value of the evidence; the danger of that prejudice must substantially outweigh the evidence's probative value." *Id.*  "The trial court has broad discretion to determine whether prejudice inherent in otherwise relevant evidence outweighs its probative value." *Id.*

Of course, some danger for prejudice will always arise merely from disclosing a prior uncharged bad acts to a jury, but that danger must substantially outweigh the probative value of the proffered evidence.  The United States acknowledges that the use of prior firearm possession to prove knowledge "involves a kind of propensity inference (*i.e.,* because he knowingly possessed a firearm in the past, he knowingly possessed the firearm in the present case)." *United States v. Moran* at 1145.  However, the Tenth Circuit has approved admission of this type of evidence "as long as it tends to prove something other than criminal propensity." *United States v. Benford*, 875 F.3d 1007, 1013 (10th Cir. 2017) (affirming use of three-month-old text messages about trading guns and witness testimony that defendant held gun in the past). In this case, the evidence of the two 2022 incidents are more than just propensity evidence. Rather, they are recent events probative of Defendant's knowledge, intent and lack of mistake which are at issue in this matter. Consequently, the probative value of this evidence is not substantially outweighed by the danger of unfair prejudice and the third *Huddleston* factor is satisfied.

Presentation of the Defendant's previous convictions for possession of firearms is equally admissible.  To begin, the Defendant has been convicted and sentenced on the matters.  Therefore, a jury would not be inclined to convict the Defendant on an improper basis because he has already been punished for his misdeeds.  Rather, the Defendant's previous convictions for possession of

firearms are highly probative to the charged conduct because of the multiple proper purposes the United States laid out above. While the introduction of these convictions necessarily carries the risks that unfair prejudice may result because the jury might be tempted to consider them as propensity evidence, their probative value is also clear. For one, Defendant has not expressed an intent to stipulate to the fact that he has a prior felony and knew of the felony conviction when he possessed the firearms at issue, elements the government is required to prove to convict him of Felon in Possession of a Firearm under § 922(g)(1). *Rehaif v. United States*, 139 S. Ct. 2191 (2019). Considering the Supreme Court's decision in *Rehaif*, a defendant must, in addition to stipulating to his prior felony conviction, also stipulate that he knew of his status as a prohibited possessor when he allegedly possessed the firearms or ammunition. Otherwise, the prosecution will be permitted to offer evidence of defendant's prior conviction to establish these essential elements of a § 922(g)(1) charge. *See United States v. Grant*, 2020 WL 7398780, *2 (D. Colo. Dec. 17, 2020), *United States v. McKinney*, No. 20-CR-019-CVE, 2021 WL 2206826, at *1 (N.D. Okla. June 1, 2021). Accordingly, the probative value of this evidence is not substantially outweighed by the danger of unfair prejudice and the third *Huddleston* factor is satisfied.[1]

### 4. The district court will instruct the jury pursuant to Rule 105 to consider the evidence only for the purpose for which it was admitted.

The fourth and final *Huddleston* factor requires the district court, upon request, to instruct the jury to consider the evidence only for the purpose for which it was admitted. "If a court admits evidence that is admissible ... for a purpose – but not ... for another purpose – the court, on timely request, must restrict the evidence to its proper scope and instruct the jury accordingly." Fed. R. Evid. 105. For example, "[a] limiting instruction cautions the jury that the Rule 404(b) evidence

---

[1] If the court believes the probative value of admission of all prior convictions is substantially outweighed by the danger of unfair prejudice, the court can limit the number of prior convictions admitted.

should be considered only for the purposes for which it was admitted and not as evidence of the defendant's character or propensity to commit an offense." *Davis*, 636 F.3d at 1298.  It is the common practice of this court to include such a limiting instruction, and "absent a showing to the contrary, there is a presumption that jurors will conscientiously follow the trial court's instructions." *Brooks*, 736 F.3d at 941. The final *Huddleston* factor can be met.

## IV.     CONCLUSION

The United States asserts the Defendant's previous encounters with law enforcement which involved firearms and his past convictions for possessing firearms when he was prohibited from doing so demonstrates the Defendant's knowledge, intent, and lack of mistake or accident, as related to his possession of firearms in the present case and such is admissible under the accepted principles set forth in Rule 404(b).  Having notified the Court and the Defendant of the proposed prior evidence, explained its proper purpose, its relevance, and the absence of unfair prejudice, the United States requests the Court find the evidence is admissible at trial under Fed. R. Evid. 403 and 404(b).

DATED this 9th day of April, 2024.

NICHOLAS VASSALLO
United States Attorney


By:     */s/ Stephanie I. Sprecher*
STEPHANIE I. SPRECHER
Assistant United States Attorney

By:     */s/ Mackenzie R. Morrison*
MACKENZIE R. MORRISON
Assistant United States Attorney

## <u>CERTIFICATE OF SERVICE</u>

       I hereby certify that on the 9th day of April, 2024, the foregoing was electronically filed

and consequently served on defense counsel and upon:

Frank Ray Berris, #98100-510
**C/O Scotts Bluff Detention Center**
2522 7th Street
Gering, NE 69341


            _/s/ Lisa Wait_____
            For the United States Attorney's Office